■ In the Matter of ELIZABETH B. KRYSTON, Appellant, v BOARD OF EDUCATION OF THE EAST RAMAPO CENTRAL SCHOOL DISTRICT et al., Respondents.—In a proceeding pursuant to CPLR article 78 to compel the respondents, *inter alia,* to grant petitioner access to certain test scores of students in the respondent school district, the appeal is from so much of the judgment of the Supreme Court, Rockland County, dated December 20, 1979, as denied access to those of the test scores which are compiled in alphabetical order. Judgment reversed insofar as appealed from, on the law, without costs or disbursements, the provisions denying disclosure of certain test scores in alphabetical order are deleted therefrom, and respondents are directed to rearrange the order of the test scores in question, delete the names of the students therefrom, and release the records to the petitioner. The petitioner, a parent of a student in the respondent school district, seeks disclosure of certain standardized reading and mathematics test scores of children who attended grade 3 in the El Dorado School during the 1977-1978 school year. Specifically, the petitioner expressed an interest in the scores of six tests. Of these, the scores on four were tabulated and recorded alphabetically by student surname. The remaining test scores were not compiled in alphabetical order. When respondents refused to release any of the scores, the petitioner instituted a proceeding pursuant to CPLR article 78, *inter alia,* to compel disclosure. The court granted the petition in part by directing, *inter alia,* that the respondents release those scores not compiled in alphabetical order after first deleting the names of the students. The court declined, however, to order the release of scores listed in alphabetical order, holding that such disclosure would violate section 87 (subd 2, par [b]) of the Public Officers Law as well as relevant provisions of the Family Educational Rights and Privacy Act (US Code, tit 20, § 1232g). The court reasoned that those scores, even if released with the names of students deleted, would be identifiable to at least some of the students since their number was sufficiently small—75—to permit correlation to the alphabetical list. Recognizing that this danger could be obviated by directing the respondents to rearrange the scores in other than alphabetical order, the court nevertheless declined to do so holding that the respondents had no affirmative duty to prepare a

new record in order to make information available for public inspection. Under the circumstances of this case, we conclude that the court's failure to order disclosure was error. The petitioner sought disclosure pursuant to article 6 of the Public Officers Law, known as the Freedom of Information Law. In pertinent part, the Pubic Officers Law provides: "§ 87. Access to agency records * * * 2. Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that: (a) are specifically exempted from disclosure by state or federal statute; (b) if disclosed would constitute an unwarranted invasion of personal privacy". "§ 89. General provisions relating to access to records; certain cases * * * 2 * * * (c) Unless otherwise provided by this article, disclosure shall not be construed to constitute an unwarranted invasion of personal privacy * * * (i) when identifying details are deleted". Similarly, with respect to educational agencies like the respondent school district which receive Federal funds, the Family Educational Rights and Privacy Act provides in pertinent part: "No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records" (US Code, tit 20, § 1232g, subd [b], par [2]). We agree with Special Term that release of an alphabetical list of test scores would constitute disclosure of personally identifiable information since only 75 students are involved. We hold, however, that the court should have ordered the respondents to rearrange the scores so as to take them out of alphabetical order. As the court correctly held, an agency is not required to prepare a new record to accommodate public disclosure. Subdivision 3 of section 89 of the Public Officers Law provides in part that "Nothing in this article shall be construed to require any entity to prepare any record not possessed or maintained by such entity". Subdivision 4 of section 86 of the same statute defines the term "record" as "any information kept, held, filed, produced or reproduced by, with or for an agency * * * in any physical form whatsoever". We are of the view, however, that, within the meaning of the foregoing statutes, rearranging or "scrambling" the test scores so as to change the order in which they are listed would not constitute the preparation of a "record not possessed or maintained" by the respondents. Were there any doubt on this question it would properly be resolved in favor of the petitioner since public disclosure statutes, both State and Federal, have been liberally construed to permit maximum access to documents. (See, e.g., *Matter of Miracle Mile Assoc. v Yudelson,* 68 AD2d 176, 181; *Vaughn v Rosen,* 484 F2d 820, 823.) Disclosure of the test scores here, in a "scrambled" order and with names deleted, would protect the privacy of the students, provide the petitioner with the records she seeks, and impose no onerous burden upon the agency. It would therefore, be fully consistent with the policy considerations and objectives underlying the Freedom of Information Law as well as appropriate Federal statutes. Accordingly, we reverse the judgment insofar as appealed from, and we direct that the respondents rearrange the order of the test scores in question, delete the names of the students therefrom, and release the records to the petitioner. Mollen, P. J., Hopkins, Titone and Mangano, JJ., concur.